IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

PATRICIA KELSEY, AND AS
ADMINISTRATOR OF THE ESTATE OF
LAWRENCE KELSEY,

   Plaintiff,

v.                 Case No.

FLINT GROUP, INC., formerly FLINK INC.,

   Defendants.

## COMPLAINT

AND NOW, comes Plaintiff, Patricia Kelsey, appearing individually as a plaintiff, and as administrator of the Estate of Lawrence Kelsey, alleges the following in her Complaint against defendant for personal injuries resulting in the death of her husband, Lawrence Kelsey, and will show the itemized damages pled herein were caused by the negligence and/or fault of Flint Ink Group Inc., formerly Flint Ink, 14909 N. Beck Road, Plymouth, MI 48170-2411, referred to hereinafter as "Defendants", pleading the following:

## PARTIES

1. Plaintiff, Patricia Kelsey, a Kentucky resident, is appearing individually and as administrator of the Estate of Lawrence Kelsey, and represents those members of the estate of Mr. Kelsey, who was also a resident of Kentucky,

2. Jurisdiction exists and personal jurisdiction is established because the defendants made large amounts of sales and other business transactions in the State of New York, establishing general personal jurisdiction and specific jurisdiction for causing injuries in this state by the distribution and sale of their defective products.

1

3. Decedent was caused to be exposed to the solvents made and/or supplied by the defendants because he worked as a "press operator," in a printing business, which work caused him to be exposed to printing ink and solvents containing benzene; defendants are jointly and severally liable for the following non-exclusive fault, and, alternatively negligence;

4. Defendants are the Flint Group, Inc., formerly Flint Ink, 14909 N. Beck Road, Plymouth, MI 48170-2411. Despite diligent efforts to identify suppliers of chemicals by subpoena to Mr. Kelsey's former employer and through government agencies such as the E.P.A, plaintiff first became aware of Flint Group, Inc., as a manufacturer and/or distributor, was in a deposition of a former supervisor on or about December 6, 2017.

5. Defendants marketed and distributed unreasonably dangerous products as that term is used in product liability law, making solvents and/or inks for use with printing presses, which liquids were used as ink, or as solvents to mix with ink, and which products contained harmful cancer-causing benzene, which caused Mr. Kelsey's cancer and resulting death;

6. Flint Group Inc., formerly Flint Ink, sold "General Printing Ink," and solvents, and they contained up to or in excess of a safe level of toluene Flint sold ink to her husband's employer and contained oil based inks which had to be mixed with solvents in order to perform. Further, that the inks could not be used without being "cut" with solvents.

7. Defendants therefore sold a product that was unreasonably dangerous under New York or Michigan law. The failure to provide full and complete warnings of the aforesaid risk of harm on labels and in MSDS papers was a marketing defect as that term is understood under the law. The marketing defect was in violation of New York and/or Michigan common law pertaining to products liability law and was in violation of the Restatement of Torts 2nd Section 402A.

8. Plaintiff will amend this complaint to allege said fictitiously named Defendants' true names and capacities when the same shall be ascertained. Plaintiff is informed and believes and alleges that each fictitiously named Defendant was responsible in some manner for the occurrences herein, and that Plaintiff's damages as herein below set forth were directly and proximately caused by said Defendants' conduct.

9. Plaintiff alleges that Defendants are responsible for their negligence, or alternatively for their fault in violating the product liability laws of this state.

10. Plaintiff brings this action individually for her own damages, loss of support, loss of consortium, loss of love and affections, guidance and nurture, and sues for the deceased's pain and suffering and mental anguish, known as survivorship damages, and sues for damages to her children, and their loss of love, affection, guidance, nurture, solace, support, and inheritance; and, she sues for all other members of the estate for which she also brings this claim.

11. She alleges defendants' negligence, or, pleading alternatively the fault, caused the injury and death of her husband, Lawrence Kelsey, and she alleges defendants' breach of duty or alternatively the sale and manufacture of their defective products were the proximate cause and/or producing cause of the resulting harm and death to her husband, and ensuing damages.

**VENUE AND PERSONAL JURISDICTION**

12. Venue is proper in this jurisdiction because Defendants manufactured goods that were sold or delivered through interstate commerce to locations where plaintiff was harmed, including in New York and/or Michigan; and defendants are corporations that either manufactured, distributed, or sold their harmful products for use in this state and caused harm to plaintiff.

**SUBJECT MATTER JURISDICTION**

13. Pleading alternatively, this action is a claim for damages under New York and/or Michigan products liability law, the Restatement of Torts as applied to strict product liability, and for acts and omissions of negligence pled against the Defendant manufacturers of ink, chemicals, and solvents, including those whose manufacturers whose names are unknown at this time;

14. Plaintiff alleges defendants' negligence and/or fault, contributed to cause injuries to Lawrence Kelsey, before death, which Patricia Kelsey, sues in order to recover his survivorship benefits, and plaintiff sues individually and on behalf of the estate of her late husband for his wrongful death;

15. Plaintiff alleges her husband was caused to have suffered severe injuries and to have lost his life due to inhaling fumes of defendants' products, and through dermal contact with their toxic chemicals to which he was exposed while working for Sonoco, Morrell Press and Amcor Flexible;

16. Said exposure occurred while he was mixing inks, cleaning parts with solvents, inhaling and touching defendants' chemicals, and doing other tasks that exposed him for many hours per day for over twenty years.

## OPERATIVE FACTS

17. Mr. Kelsey worked for Sonoco Flexible Packaging Company in Fulton, New York from 1988 through 2004, Alcan Packaging Inc. from 2005 through 2007, and for Amcor Pharmaceutical Packaging USA, Inc./Amcor Packaging, Inc. in Kentucky from 2004 through 2013 mixing inks and cleaning parts, while working in excess of forty hours per week.

18. Mr. Kelsey's job duties as a press operator required him to mix solvents, inks, and blends of inks for use in the printing industry, applying solvents for cleaning tasks, and doing

other tasks that exposed him to harmful toxins made by defendants.

19. Mr. Kelsey was exposed to products made by defendants that were defectively designed, and therefore unreasonably dangerous as that term is defined under New York and/or Michigan Product Liability Laws.

20. Mr. Kelsey worked with the benzene, toluene, and other toxic chemicals on a regular and continuing basis from 1988 through 2013, cleaning parts and equipment and working with the products made by the defendants.

21. Following a bone marrow biopsy, Mr. Kelsey was diagnosed with Myelodysplastic Syndrome on or about March 13, 2013 at the age of 49.

22. Following a bone marrow transplant on July 19, 2013 and subsequent complications, Mr. Kelsey passed away on May 28, 2014.

23. Mr. Kelsey, worked as an ink mixer and printer, using solvents from 1988 to 2013, and he alleges that each of the Defendants manufactured, sold or distributed the defective toxic products that he breathed and contacted performing his usual and customary work tasks at cleaning stations, work areas, and printing rooms;

24. It is alleged that each of the Defendants were negligent, or alternatively is strictly liable in product liability law as a seller, distributor, and/or a manufacturer of products which were defective due to either or both marketing defects and design defects as defined under New York and/or Michigan product liability laws;

25. It is alleged that under strict liability, the defendant manufacturers and sellers' had knowledge of the defects and dangers of their products as it is presumed, and it is assumed the seller knew of the product's propensity to injure the decedent;

26. It is alleged that the defects in defendants' products existed when the product left

the defendants' control and that the defects caused injury to decedent as a reasonably foreseeable user.

27. In plaintiff's failure-to-warn case, she alleges product defect is not a flaw in the structure or design of the product itself, but the defect is the absence of a warning to her husband, an unsuspecting user of the product, who did not know it, could potentially cause him injury.

28. It is alleged that in doing the acts herein alleged, defendants' fault in defective design was a substantial factor in causing Mr. Kelsey's Myelodysplastic Syndrome, related illnesses, and death, rendering defendants liable for the damages and injuries that resulted from this conduct.

29. Mr. Kelsey was not warned by Defendants of the danger of their products containing a chemical, which causes Myelodysplastic Syndrome, and the necessity to use respiratory protection, and the need for special handling to avoid being exposed to the benzene-based chemicals and other toxic chemicals.

30. Mr. Kelsey was unaware of the risk of personal injury or death caused by working with Defendants' products.

31. Plaintiff's job required him to pump the benzene-based chemicals from fifty-five gallon drums for use at work for the purpose of making ink, and for cleaning the presses, without proper handling instructions and warnings by Defendants, causing him to be exposed to various harmful toxic chemicals.

32. Pleading in the alternative, Plaintiff developed myelodysplastic syndrome because of the negligence of Defendants in their marketing and distribution of the ink and solvents, and negligence in failing to properly test their toxic chemical products, which products were unreasonably dangerous and defective;

33. Defendants' products were defective as that term is described in New Jersey product liability law, both in manufacturing defects, design defects, and marketing defects, making defendants liable for both negligence and breach of strict product liability laws, and the Restatement of Torts, section 402 A.

34. Defendants knew of the risks of the extreme risk of harm from being exposed to their chemical agents, and by their conduct acted as if they did not care if users of their products, including Mr. Kelsey, became injured or ill with cancer, MDS, or other diseases, and showed a conscious indifference to the welfare of the persons using this product.

35. Plaintiff brings this action seeking punitive damages for willful and wanton misconduct by endangering the welfare and safety of the community and that of Mr. Lawrence Kelsey.

## COUNT I: PRODUCT LIABILITY CLAIMS UNDER NEW YORK AND/OR MICHIGAN LAW

36. Pleading in the alternative, Plaintiff claims the named Defendants and DOES 1 THROUGH 10 manufactured and/or sold products that were unreasonably dangerous and defective as defined in New York products liability law, and the Restatement of Torts, Section 402 (a) et sequence, for marketing and design defects, and she alleges that the products to which her husband was exposed were unreasonably dangerous and defective, and plaintiff alleges the following:

    a. The ink and solvent products, or alternatively chemicals, and/or additives, were toxic, posing an unreasonable risk of harm, which risk was unknown to Mr. Kelsey, and known to the manufacturers, creating a risk of harm that outweighed the utility of the product and that was not within decedent's knowledge, or the ordinary consumer's knowledge;

7

b.  Defendants were aware of the risk of cancer caused by the use of their products, it was foreseeable to them under plaintiff's working conditions, due to prior notice and suits concerning the defectiveness and harmfulness of the products;

c.  Defendants gave improper, or non-existent and defective marketing instructions and defective warnings that were within the realm of correction both technologically and economically; and, the toxic products could have been made more safe as required by applicable codes and laws, and the Restatement of Torts, 402 A.

d.  As manufactured, designed, and sold/marketed, the products complained of presented an unreasonable risk of harm with severe cancer-causing toxic characteristics, and the defendants' products were knowingly sold in this harmful condition, and put in commerce with design and marketing defects.

e.  The harmful cancer-causing toxic characteristics of the chemicals, and the extreme risk of permanent impairments, damage to the blood cells of the body, the risk of being caused to develop Myelodysplastic Syndrome, Acute Myelogenous Leukemia, damage to the blood manufacturing system, and damage to other organs and to the neurological system was known to defendants at the time of sale;

f.  The products were sold without instructions concerning how to protect oneself against the danger from the use of the products, which were benzene laden solvents, or other products;

g.  The products were sold without warnings of the need to wear respiratory protection and dermal protection, and use of chemical filters;

h.  The products were "unreasonably dangerous" and defective at the time of sale, as those terms are defined in product liability law, and the Restatement of Torts, Section 402 A.

**COUNT II: ALLEGATIONS OF NEGLIGENCE**

37. Plaintiff incorporates herein by reference paragraphs 1 through 38 above, as if each was fully set forth herein, pleading each contention against defendants and each un-named JOHN DOE Defendant.

38. Pleading in the alternative, Defendants were negligent for the following breaches of duty, or violations of product liability laws which caused the injuries to Mr. Kelsey, his death, and the damages claimed herein:

    a. Defendants had a duty to conform their conduct to a reasonable standard of care in the manufacture, design, and marketing of the product, requiring them to issue proper instructions for the use of the product, and to warn of the dangers of their product's use;

    b. To have inspected and tested the product for safe usage;

    c. To notify plaintiff and the public of the dangers that product posed and the protection needed from this danger; to recommend medical monitoring of the health of users of the product;

    d. Defendants failed to conform its conduct to this appropriate standard of care, failed to warn and instruct on what to do using the products to avoid the risk of injury from toxic exposure, or alternatively, what protective equipment and other safety measures were necessary to use and available to the public;

    e. The packaging and the instructions on the product were defectively designed and contained marketing defects as that term is used in products liability law;

    f. Defendants breached their legal duty to Plaintiff to warn and to instruct of the dangers and risks of harm associated with their product, and they sold a defectively designed package and product;

    g. Defendants' substandard conduct, and/or fault, was a cause-in-fact of the Plaintiff's injuries;

    h. Defendants' substandard conduct, and/or fault under products liability laws were the legal cause of the Plaintiff's injuries, and actual damages.

42. As a result of Defendants' negligence and, in the alternative, fault under strict liability for making and selling defective products, Plaintiff's husband was caused to sustain the following injuries and damages prior to death, for which Plaintiff sues the Defendants:

    a. In developing myelodysplastic syndrome [MDS], fear of cancer, physical pain and suffering, mental anguish, and loss of enjoyment

        of life;

        b.     While living, medical, pharmaceutical, physician, & hospital expenses.

        c.     Emotional & Physical Pain, Suffering and Fear of progressing impairments and death;

        d.     Lost wages, and an inability to support his wife and family;

        e.     Loss of physical function associated with his MDS.

        f.     Travel and other medically related expenses for medical treatment and care.

### COUNT III: Wrongful Death

Plaintiff, incorporates the above allegations 1-42 as if fully set forth herein, and, as the duly appointed, qualified, and acting executor of the estate of Lawrence R. Kelsey, deceased, who died on May 28, 2014, leaving as survivors those persons listed below.

43.     The only surviving heirs of Lawrence R. Kelsey, deceased (here referred to as decedents), are:

| **Name** | **Relationship** |
| --- | --- |
| Patricia Kelsey | Widow |
| Shawn Kelsey | Son |
| David Kelsey | Son |
| Katy Kelsey | Daughter |

44.     As a direct and proximate result of the death of decedent, decedent's surviving heirs have been deprived of decedent's future support, love, care, comfort, affection, society, presence, companionship, counsel, protection, and services, and, additionally, as to plaintiff, she has been deprived of those factors and loss of consortium.

45.     As a further direct and proximate result of the death of the death of the decedent,

decedent's heirs have paid funeral and burial expenses.

## COUNT IV: Survival Action

46. Plaintiff re-alleges paragraphs 1 to 46 of this Complaint as if fully set forth herein.

47. Prior to decedent's death, decedent incurred substantial pain, suffering, mental anguish, medical and hospital expenses as a direct and proximate result of defendants' wrongful acts or omissions, and alternatively, fault and breach of warranty as described in this Complaint, and expenses that may be, in whole or in part, subject to subrogation. These damages were caused by the fault, or alternatively, the negligence.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff Patricia Kelsey, individually and on behalf of the estate of Lawrence Kelsey, comes now and prays that after Defendants are made to appear and answer, that Defendants be cast in judgment together with Defendants JOHN DOES 1 THROUGH 10, each of them, and held liable jointly and severally for the injuries and damages suffered, and punitive damages together with pre-judgment and post-judgment interest as allowed; all general and equitable relief, costs of suit; attorney's fees, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ GREGORY PAUL

GREGORY G. PAUL
Morgan & Paul, PLLC
PA ID Number: 83334
First and Market Building
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(844) 374-7200
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com

Counsel for Plaintiff

Dated: December 6, 2018